Anna Y. Park, SBN 164242
Sue J. Noh, SBN 192134
Rumduol Vuong, SBN 264392
Jennifer L. Boulton, SBN 259076
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
255 East Temple Street, Fourth Floor
Los Angeles, CA 90012
Telephone: (213) 894-1083
Facsimile: (213) 894-1301
E-Mail: lado.legal@eeoc.gov

Attorneys for Plaintiff
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TAPIOCA EXPRESS, INC., ERIVERA ENTERPRISE, LLC dba TAPIOCA EXPRESS, EDELEEN, INC. dba TAPIOCA EXPRESS, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: **'18CV1217 MMA BLM**<br><br>**COMPLAINT—CIVIL RIGHTS/EMPLOYMENT DISCRIMINATION**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful

-1-

employment practices and to provide appropriate relief to Charging Parties Dianne Panganiban and Beatriz Guarin (collectively, the "Charging Parties") and a class of similarly aggrieved individuals (collectively, the "claimants"). As set forth with greater particularity in paragraph 20 of this Complaint, Plaintiff United States Equal Employment Opportunity Commission ("Plaintiff" or "Commission") alleges that Defendant Tapioca Express, Inc., Defendant Erivera Enterprise, LLC dba Tapioca Express, and Defendant Edeleen, Inc. dba Tapioca Express (collectively, "Defendants") unlawfully subjected Charging Party Dianne Panganiban, Charging Party Beatriz Guarin, and a class of similarly aggrieved individuals to sexual harassment, including a hostile work environment, because of their sex (female). The Commission also alleges that Defendants further violated Title VII by subjecting some claimants, including the Charging Parties, to constructive discharge.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of California.

## PARTIES

3.  Plaintiff is an agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.  At all relevant times, Defendant Tapioca Express, Inc. ("Tapioca

Express") has continuously been a corporation doing business in the State of California and has continuously had at least 15 employees.

5. At all relevant times, Defendant Tapioca Express has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. At all relevant times, Defendant Erivera Enterprise, LLC dba Tapioca Express ("Erivera") has continuously been a limited liability company doing business in the State of California and has continuously had at least 15 employees.

7. At all relevant times, Defendant Erivera has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

8. At all relevant times, Defendant Edeleen Inc. dba Tapioca Express ("Edeleen") has continuously been a corporation doing business in the State of California and has continuously had at least 15 employees.

9. At all relevant times, Defendant Edeleen has continuously been an employer engaged in an industry affecting commerce under Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

10. At all relevant times, Defendants employed the Charging Parties and a class of similarly aggrieved individuals.

11. At all relevant times, Defendants Erivera and Edeleen were under contract with, franchisees of, and joint employers with Defendant Tapioca Express. As joint employers, Defendants all generally controlled the terms and condition of the employment of the Charging Parties and other aggrieved individuals. Specifically, Defendant Tapioca Express: had control over employees, including, but not limited to the employment, recruitment, or hiring of employees of Defendants Erivera and Edeleen; knew or should have known of the below described unlawful employment actions; and had the power to prevent and/or correct the unlawful employment actions. For example, pursuant to the contractual

agreement entered into between Defendant Tapioca Express and Defendants Erivera and Edeleen, Defendant Tapioca Express retained the right to approve of the employment, recruitment, or hiring of any employee who had previously worked for Defendants, *e.g.*, the Charging Parties and other aggrieved claimants who worked for Defendants Erivera and/or Edeleen. Defendant Tapioca Express also received and responded to Charging Party Dianne Panganiban's October 2013 complaint regarding the unlawful employment actions, including sexual harassment and constructive discharge, to which Eduardo Rivera, owner of Defendants Erivera and Edeleen, subjected her. In addition, Defendant Tapioca Express sent a copy of Charging Party Dianne's complaint to owner Rivera to purportedly prevent other employees from experiencing "misleading or uncomfortable feelings" and further suggested owner Rivera exercise caution in the future and have the store manager obtain relevant training. Notwithstanding Defendant Tapioca Express's ability to prevent and correct the harassment, other claimants, including Charging Party Beatriz Guarin, were subjected thereafter to unlawful employment actions, as described below, by owner Rivera.

12. All acts and failures to act alleged herein were duly performed by and attributable to all Defendants, each acting as a successor, agent, alter ego, employee, indirect employer, joint employer, integrated enterprise and/or or under the direction and control of the others, except as specifically alleged otherwise. Said acts and failures to act were within the scope of such agency and/or employment, and each Defendant participated in, approved, and/or ratified the unlawful acts and omissions by the other Defendants complained of herein. Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and/or severally.

13. Plaintiff is ignorant of the true names and capacities of each defendant

sued as DOES 1 through 10, inclusively, and therefore Plaintiff sues said defendants by fictitious names. Plaintiff reserves the right to amend the complaint to name each DOE defendant individually or corporately as it becomes known. Plaintiff alleges that each DOE defendant was in some manner responsible for the acts and omissions alleged herein and Plaintiff will amend the complaint to allege such responsibility when the same shall have been ascertained by Plaintiff.

## STATEMENT OF CLAIMS

14. More than thirty days prior to the institution of this lawsuit, Charging Parties Beatriz Guarin and Dianne Panganiban filed charges of discrimination with the Commission alleging violations of Title VII by Defendants.

15. The Commission conducted an investigation into the allegations in the Charging Parties' charges which included, but was not limited to, seeking documents and interviewing witnesses.

16. On July 20, 2017, the Commission issued to Defendants Letters of Determination finding reasonable cause to believe that Defendants had violated Title VII as to the Charging Parties and a class of similarly situated individuals. The Commission further invited Defendants to join with it in informal methods of conciliation in a collective effort toward a just resolution.

17. The Commission engaged in communications with Defendants to provide Defendants the opportunity to remedy the discriminatory practices described in the Letters of Determination.

18. On September 27, 2017, the Commission issued to Defendants a Notice of Failure of Conciliation advising Defendants that the conciliation efforts were unsuccessful.

19. All conditions precedent to the institution of this lawsuit have been fulfilled.

20. Since at least 2013, Defendants have engaged in unlawful employment practices in violation of Section 703(a) of Title VII, 42 U.S.C. §

2000e-2(a), by subjecting the Charging Parties and a class of aggrieved individuals to harassment on the basis of their sex (female), including a hostile work environment, and constructive discharge.  The unlawful employment practices include but are not limited to:

      a.      Eduardo Rivera aka "Uncle," owner of Defendants Erivera and Edeleen, employed very young employees (between the ages of 17 and 23) at his various franchisee locations.  Many of those young employees are female.  At the time the Charging Parties were hired, owner Rivera was in his fifties.  Owner Rivera's adult children, Edward and Elaine Rivera, each have an ownership interest in Defendants Erivera and Edeleen.  Additionally, Edward and Elaine Rivera are members of management at Defendants Erivera and/or Edeleen.

      b.      Charging Party Dianne Panganiban began working for Defendant Erivera as a barista in or around July 2013, at its location in Chula Vista, California.  At the time she was hired, Ms. Panganiban was 22 years old.

      c.      Charging Party Beatriz Guarin began working for Defendant Erivera as a barista in or around January 2014 at its location in National City, California, and thereafter was moved in or around mid-February to Defendant Edeleen's location in Chula Vista, California.  At the time she was hired, Ms. Guarin was 19 years old.

## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT

      d.      Since at least 2013, Owner Rivera subjected the Charging Parties and a class of aggrieved female employees to severe or pervasive sexual harassment.  As the owner of Defendants Erivera and Edeleen, owner Rivera would regularly frequent the various locations where the claimants worked.  While there, owner Rivera would look for opportune moments—*e.g.*, moments when his wife was not around, when there were less witnesses around, when he was alone with the claimants, and/or when he could not be caught on camera—to harass the claimants.  While the claimants were working, for example, owner Rivera would

find occasion to routinely and/or repeatedly touch them, including brushing his hands along their butts, pushing up against them from behind, hugging and/or wrapping his arm around them, touching and/or rubbing their shoulder/back areas, leaning in close to them, and/or even trying to kiss Charging Party Dianne Panganiban. Generally, owner Rivera's sexual harassment of the claimants escalated in severity and pervasiveness over time. For example, owner Rivera would sometimes begin by asking the claimants questions about their relationship status, and thereafter subject them to the aforementioned physical sexual harassment, in addition to increasingly offensive and unwelcome comments, including making comments about their butts and breasts, such as saying that her butt is nice or her breasts are the size of mixing bowls, saying that he liked "thick" girls, making comments about their appearance, and/or pressuring some of the claimants to go out with him. Such conduct was unwelcome at all times by the claimants.

        e.      When Ms. Guarin began working at the National City location in or around January 2014, for example, owner Rivera was very friendly with her whenever he saw her. As with other claimants, owner Rivera began by asking Ms. Guarin personal questions about her life, which became increasingly inappropriate over time. Thereafter, in or around February 14, 2014, while Ms. Guarin was washing blenders and owner Rivera's wife was in the back of the store, owner Rivera placed his arm on Ms. Guarin for a prolonged time. Shocked by the unwelcome touching, Ms. Guarin tried to move away, but owner Rivera continued to touch her. When owner Rivera finally removed his hand, he then rubbed Ms. Guarin's shoulder/back area and told her to have a good Valentine's day.

        f.      The following day, Ms. Guarin was moved to the Chula Vista location—a location which Ms. Guarin noted that owner Rivera visited with greater frequency than her prior location. As their interactions increased at the new location, owner Rivera began subjecting Ms. Guarin to increasingly severe

and pervasive harassment. For example, while Ms. Guarin was working, owner Rivera would make comments about her having a "dirty apron" and not being "wife material." In addition, after asking Ms. Guarin if she could speak Tagalog, Owner Rivera asked her to translate "Bea is beautiful" into Tagalog. Owner Rivera would also stare and/or look at Ms. Guarin up and down as she was working. On one occasion, after staring at Ms. Guarin mop the floors, owner Rivera began to ask Ms. Guarin inappropriate personal questions, including, but not limited to, whether she was married, whether she had a boyfriend, and whether she was with the father of her child. Thereafter, as Ms. Guarin was trying to leave, owner Rivera wrapped his arm around her. Although Ms. Guarin tried to shrug his arm off and walk away, he continued to hold on to her. As Ms. Guarin walked faster, she was finally able to escape from owner Rivera's hold as she neared her car which was parked outside. On another occasion, after watching Ms. Guarin close the cash register with her hip, owner Rivera told Ms. Guarin that if she kept closing the cash register with her hip like that she was going to get pregnant, noting that she was an "expert" at that because she already had a baby. Owner Rivera also made comments about Ms. Guarin's personal appearance, including why she was wearing so much makeup, whether she was going out, and whether her eyelashes were real (while trying to touch them).

        g.      In or around April 5, 2014, owner Rivera relentlessly pressured Ms. Guarin and another claimant to go out with him. Owner Rivera told Ms. Guarin, for example, that he knew of a place that they could go which allowed underaged drinking, that his wife was out of town, he was home alone, he was "single for the night," and that it's too bad Ms. Guarin is too young. Intent to go out with Ms. Guarin, owner Rivera also pressed up against her from behind while she was working and tried to pressure her to go out with him. Before leaving the store for the evening, owner Rivera leaned in and whispered in Ms. Guarin's ear something to the effect of, "Call me if you want to go out. Call me if you're

ready," and then left his phone number on the counter. Although owner Rivera left the store, he returned prior to the end of Ms. Guarin's shift asking her again if she would go out with him. Ms. Guarin declined. Notwithstanding her rebuff of owner Rivera's unwelcome advances, later that evening, Ms. Guarin received a text from her supervisor, Bernadette Cupino, asking her again if she wanted to go out with owner Rivera. Ms. Guarin again declined. Thereafter, on or about April 11, 2014, Ms. Guarin resigned. The aforementioned behavior was unwelcomed at all times by Ms. Guarin.

   h. Witnesses confirm that owner Rivera subjected female employees to sexual harassment, including, but not limited to, making comments about employees' breasts and butts, brushing his hand along an employee's butt, hugging and/or side hugging them, touching them on their shoulders, and making inappropriate jokes. In fact, one witness stated that following the incident with Ms. Guarin, he saw someone messing around with the security cameras in the store. Thereafter, the witness reports that the cameras did not work for some time.

   i. The Charging Parties and the class of aggrieved female employees did not welcome the sexual harassment by owner Rivera. The Charging Parties and other aggrieved female employees demonstrated that the sexual harassment was not welcomed by objecting to owner Rivera's harassing behavior. The claimants' objections included, but were not limit to, rebuffing his advances, telling him "no," and/or trying to move away and or shrug off his unwelcome advances. In addition, notwithstanding the lack of training on sexual harassment and the complaint procedure, Ms. Panganiban further showed her objection to owner Rivera's behavior by complaining to the franchisor, Defendant Tapioca Express, and filing a charge with the EEOC. Like Ms. Panganiban, Ms. Guarin also further objected to owner Rivera's behavior by filing a charge with the EEOC.

   j. In or about October 29, 2013, for example, Ms. Panganiban contacted the franchisor, Defendant Tapioca Express, notifying them of the sexual

1  harassment by owner Rivera and her constructive discharge.  In so doing, Ms.
2  Panganiban communicated to Defendant Tapioca Express that she wanted to make
3  sure that something was done to stop any other inappropriate incidents that might
4  be occurring now or may occur in the future at the franchisee locations.  Defendant
5  Tapioca Express received Ms. Panganiban's email, responded to it, and sent a copy
6  of it to owner Rivera, suggesting owner Rivera exercise caution in the future and
7  have the store manager obtain relevant training.  Thereafter, on or about December
8  28, 2013, Ms. Panganiban filed a charge with the Commission, alleging that she
9  had been subjected to sexual harassment and constructive discharge, in violation of
10 Title VII.  Defendants received notice of Ms. Panganiban's charge.

11         k.      Notwithstanding Ms. Panganiban's complaint with Defendant
12 Tapioca Express and the charge she filed with the Commission, Defendants failed
13 to exercise reasonable care to prevent and promptly correct the unlawful
14 employment practices.  As a result, owner Rivera thereafter harassed other
15 claimants, including Ms. Guarin beginning in January 2014, and further subjected
16 some to constructive discharge.

17                          CONSTRUCTIVE DISCHARGE
18         l.      The harassment by owner Rivera was sufficiently severe or
19 pervasive to alter the conditions of the claimants' employment, and it created a
20 sexually hostile work environment which was so intolerable that it resulted in the
21 constructive discharge of several claimants, including the Charging Parties.  In the
22 case of Ms. Guarin, for example, the sexual harassment to which owner Rivera
23 subjected her escalated and intensified in severity and pervasiveness during her
24 employment.  As described above, towards the end of her employment, owner
25 Rivera's relentlessly harassed her by, *inter alia*, touching her, following her out to
26 her car, making inappropriate comments to her, pushing up against her from
27 behind, and repeatedly asking her out notwithstanding her objections.  Due to the
28 escalating and intolerable harassment to which she was subjected, Ms. Guarin

1 | feared for her safety and felt compelled to resign.  Like Ms. Guarin, other
2 | claimants were subjected to escalating harassment by owner Rivera that created
3 | intolerable working conditions compelling them to resign.

4 |     21.    The effect of the practices complained of above has been to deprive
5 | the Charging Parties and a class of aggrieved individuals of equal employment
6 | opportunities and otherwise adversely affect their status as employees because of
7 | their sex (female).

8 |     22.    The unlawful employment practices complained of above were
9 | intentional and caused the Charging Parties and a class of aggrieved individuals to
10 | suffer emotional distress.

11 |     23.    The unlawful employment practices complained of above were done
12 | with malice or with reckless indifference to the federally protected rights of the
13 | Charging Parties and a class of aggrieved individuals.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, successors, assigns, and all persons in active concert or participation with each of them, from engaging in any employment practices in violation of Sections 703(a) of Title VII.

B. Order Defendants to institute and carry out policies, practices, and programs to ensure that they would not engage in further unlawful practices in violation of Sections 703(a) of Title VII.

C. Order Defendants to make whole the Charging Parties and a class of aggrieved individuals whole by providing compensation for past and future pecuniary losses, including appropriate back pay and front pay with prejudgment interest on any lost pay and benefits, in amounts to be determined at trial;

D. Order Defendants to make the Charging Parties and a class of aggrieved individuals whole by providing compensation for past and future non-

pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

    E.    Order each Defendant to pay the Charging Parties and a class of aggrieved individuals punitive damages for the malicious or reckless conduct as described above, in amounts to be determined at trial.

    F.    Grant such further relief as the Court deems necessary and proper in the public interest.

    G.    Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated: June 11, 2018          Respectfully Submitted

JAMES LEE,
Deputy General Counsel

GWENDOLYN YOUNG REAMS,
Associate General Counsel

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
131 "M" Street, N.E.
Washington, D.C. 20507

By: _____
ANNA Y. PARK,
Regional Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION